IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HENRY SCOTT,** | : | CIVIL NO. 1:CV-08-0531 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **JERRY MARTINEZ,** | : | |
| Respondent | : | |

## M E M O R A N D U M

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Henry Scott ("Scott"), an inmate at the Low Security Correctional Institution at Allenwood, Pennsylvania. Scott alleges that his constitutional rights were violated in the context of a disciplinary proceeding. The petition is ripe for consideration and, for the reasons that follow, will be denied.

**I.     BACKGROUND**

On January 28, 2007, Officer Powell was conducting rounds at the Federal Prison Camp in Petersburg, Virginia when he observed Scott sitting in his assigned cubicle, talking on a black cellular phone. According to Powell, Scott had the phone in his right hand and was holding it to his right ear. When Scott noticed Powell, he made a throwing motion with his right hand in the direction of his bed and stood up. As Powell walked closer to the entrance of the cubicle, Scott started to approach Powell. As Powell put his hand up and twice ordered Scott to stop, Scott continued to walk past Powell, exited the cubicle out of the room, and walked into a crowd of inmates. He and his roommate were located by staff about twenty (20) minutes later. On the same date, Scott was transferred to the Special Housing Unit pending an investigation. (Doc. No. 6, Ex. 1, Hise Declar. ¶ 5.)

Powell wrote Incident Report 1560898 on January 31, 2007, charging Scott with Possession or Introduction of Hazardous Equipment, in violation of Bureau of Prisons' Code 108, and Refusing to Obey a Order, in violation of Code 307. (Id., Ex. 1, Attach. D.) Scott was thereafter provided with a copy of the report on February 1, 2007. (Id.)

On February 2, 2007, Scott appeared before the Unit Discipline Committee ("UDC"). He was afforded the opportunity to make a statement. He informed the UDC "that he never had a cell phone and that the officer never told him to stop walking." (Id.) The UDC determined that the case should be referred to the Disciplinary Hearing Officer for a hearing.

Prior to a DHO hearing being conducted, Incident Report 1560989 was suspended and returned to Officer Powell to be rewritten. BOP staff determined that the body of the original report, as written, did not contain enough evidence to support a finding that Scott committed the prohibited acts. (Id., Ex. 1, ¶ 10, Attach. E.) Further, due to the need for the report to be rewritten, Scott's Unit Team requested an extension of time to conduct another UDC hearing.[1] (Id. at ¶ 11, Attach. E.) Warden Adams approved the extension of time to conduct another UDC hearing. (Id.)

On February 9, 2007, Officer Powell rewrote Incident Report 1560898. (Doc. No. 6, Ex. 1, ¶ 12, Attach. F.) Upon reviewing the report, the DHO determined that it still lacked sufficient information regarding Scott's conduct after being confronted by Powell on the date of the incident. (Id.) Powell was asked to again rewrite the report. A second rewritten report was

---

[1] Pursuant to BOP Program Statement 5270.07, Inmate Discipline and Special Housing Unit, "[e]ach inmate so charged is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident."

prepared on February 21, 2007.  (Id., Ex. 1, ¶ 13, Attach. B.)  Scott was provided with a copy of the report the following day, charging him with the Code 108 and Code 307 violations.

On February 26, 2007, a hearing on the incident report was conducted by the UDC.  Scott again was afforded the opportunity to make a statement.  He stated " that he was not sitting in a chair in the room talking on a cell phone, did not disobey an order, and did not walk into a crowd of inmates."  (Id., Ex. 1, ¶ 15, Attach B.)  After considering the evidence, the UDC determined the matter should be referred to the DHO for a hearing.  Scott was thereafter advised of his rights before the DHO and signed the Inmate Rights at Discipline Hearing form, acknowledging that he had been advised of his rights.  (Id.)

A DHO hearing took place on March 7, 2007.  At the hearing, Scott stated that he had received a copy of the incident report and understood his rights.  (Id., Ex. 1, ¶ 17, Attach. H.)  Although he had initially requested a staff member to represent him at the hearing, he waived the right to a staff representative.  (Id.)  Scott denied the charges claiming that he did not have a cell phone.  Rather, he claims to have had headphones on his ear.  Although provided with the opportunity to present witnesses and documentary evidence, Scott chose not to do so.  (Id.)

After considering all of the evidence, the DHO found Scott guilty of the Code 108 violation, Possession or Introduction of Hazardous Equipment.  In doing so, he relied upon the personal observation of Officer Powell, a memorandum from Lieutenant Negron-Oliver, Scott's statements and also the conduct of Scott when encountered by Powell at the time of the incident.  (Id.)  The Code 307 violation of Refusing to Obey an Order was dismissed by the DHO because said conduct was considered in finding guilt with regard to the Code 108 violation.  Scott was sanctioned to the following: (1) thirty (30) days disciplinary segregation, fifteen (15) days

suspended pending 180 days clear conduct; (2) disallowance of forty-one (41) days good conduct time; (3) one year loss of telephone privileges; and (4) recommendation for a disciplinary transfer. (Id., Ex. 1, ¶ 26.)

In the pending petition, Scott alleges that he was not provided with the required due process with regard to the disciplinary action against him. He further contends that there was insufficient evidence to support the findings of the DHO. Scott also repeatedly argues throughout his petition that he could not be charged with Possession or Introduction of Hazardous Equipment since a cellular phone was never found. (Doc. No. 2 at pp. 4-7.)

**II.    DISCUSSION**

"Habeas corpus relief is available to a prisoner who has been sanctioned in violation of due process to a loss of good conduct time." Robinson v. Warden, 250 Fed. Appx. 462, 464 (3d Cir. 2007). In Wolff v. McDonnell, 418 U.S. 539, 556 (1974), the Court observed that, while inmates are entitled to a fair process before good conduct time may be removed, prison disciplinary hearings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) an opportunity to present witnesses and documentary evidence; (3) aid in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement of the decision by the factfinder. Id. at 564-67.

Where the due process requirements of Wolff are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v.

Hill, 472 U.S. 445, 455 (1985). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457.

After Hill was decided, the Third Circuit Court of Appeals indicated in Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987), that the standard to be applied in determining the sufficiency of the evidence was the one found in 28 C.F.R. § 541.17(f) - a "substantial evidence" test. Subsequent to the Henderson opinion, the BOP amended its regulations to follow the holding in Hill requiring only that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be "based on the greater weight of the evidence." See 28 C.F.R. § 541.17(f).

    **A.**    **Due Process Claims**

Scott claims he was denied due process because the incident report was "untimely, inaccurate and defective." (Doc. No. 2 at 7.) In support of his allegations, he argues that the rewriting of the report was unfair, and claims that the rewritten report was not delivered to him within twenty-four (24) hours of staff becoming aware of his involvement in the incident.[2] (Doc. No. 2 at 6, 7.)

---

[2] Scott further contends that the reports were inaccurate in that he was never found to be in actual possession of a cell phone. This argument will be addressed during the Court's discussion of the sufficiency of the evidence.

5

In the instant case, Scott was provided with each of the required due process elements. First, he timely received copies of the Incident Report. BOP Program Statement 5270.07, Inmate Discipline and Special Housing Unit, at Chapter 6 at p. 1 states that "[s]taff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within twenty-four hours of the time staff became aware in the incident." This statement is not a mandate that the report be received within twenty-four (24) hours. The use of the word "ordinarily" clearly provides the BOP with discretion. Further, pursuant to <u>Wolff</u>, all that is required is that written notice of the charged misconduct be provided at least twenty-four (24) hours before the DHO hearing. There is no dispute in the instant case that Scott received notice of the charges via the rewritten incident report on February 22, 2007. Scott's DHO hearing was not conducted until March 7, 2007, and therefore he had much more time than required by due process to prepare for his hearing.

Further, there is no dispute that Scott was provided with an opportunity to present witnesses and documentary evidence and to request staff representation, but chose not to do so. In addition, Scott does not contend that the Disciplinary Hearing Officer was not impartial or that he was not provided with a written statement of the decision of the DHO.

To the extent Scott challenges the fact that Incident Report 1560898 was rewritten, this does not violate due process. Nothing in the policy of the BOP prohibits it from correcting an error or seeking more information with regard to an incident report that is written. Moreover, Scott was not prejudiced by the rewritten report, as it did not impair his ability to present a full defense throughout the disciplinary process. See <u>Smith v. Williamson</u>, No. 1:05-cv-0321, 2006 WL 1412874, at *3 (M.D. Pa. May 23, 2006). Thus, based on the foregoing, it is clear that

Scott received all of the due process required under Wolff.

    **B.**    **Sufficiency of the Evidence Claim**

The record clearly demonstrates that the DHO met the evidentiary standard in finding that Scott had committed the act as charged in the incident report, whether the "some evidence" standard or the "greater weight of the evidence" standard is applied. In his report, the DHO fully sets forth the specific evidence he relied upon to support a finding that a violation had occurred which included Officer Powell's personal observations , the memorandum from Lieutenant Negron-Oliver and Scott's statement. While the DHO concedes that Officer Powell made some choices that may have resulted in the loss of evidence, he found that this does not make Powell's statement any less credible. The DHO further relied upon Powell's ability to observe the difference between a pair of headphones and a cellular phone, as well as Scott's conduct when confronted by Powell. While Scott's primary focus in challenging the sufficiency of the evidence is the fact that the actual phone was never retrieved, this does not undermine the DHO's determination that the greater weight of the evidence supported a finding that Scott had committed the violation. Accordingly, the Court rejects Scott's challenge to the sufficiency of the evidence, and the petition will be denied.

    An appropriate order will issue.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HENRY SCOTT,** | : | **CIVIL NO. 1:CV-08-0531** |
| Petitioner, | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **JERRY MARTINEZ,** | : | |
| Respondent | : | |

## O R D E R

**AND NOW,** this 20th day of March, 2009, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **denied**.

2. The Clerk of Court is directed to **close** this case.

S/ Yvette Kane<br>
YVETTE KANE, Chief Judge<br>
Middle District of Pennsylvania